# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 19, 2012

## STATE OF TENNESSEE v. WINSTON C. MCCLAIN

**Direct Appeal from the Circuit Court for Marshall County**
**No. 2011-CR-83      Robert Crigler, Judge**

---

**No. M2012-00252-CCA-R3-CD - Filed December 13, 2012**

---

The defendant, Winston C. McClain, appeals the sentencing decision of the Marshall County Circuit Court.  After entering an open plea agreement, and following merger, the defendant stands convicted of: (1) sale of less than .5 grams of a Schedule II controlled substance, a Class C felony; (2) possession with intent to sell .5 grams or more of a Schedule II controlled substance, a Class B felony; (3) simple possession of marijuana, a Class A misdemeanor; (4) unlawful possession of drug paraphernalia, a Class A misdemeanor; (5) evading arrest, a Class A misdemeanor; and (6) resisting arrest, a Class B misdemeanor.  Following a sentencing hearing, the defendant was sentenced to an effective term of twelve years in the Department of Correction.  On appeal, he contends that the sentence is excessive and contrary to law.  Following review, we affirm the sentence as imposed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Donna Orr Hargrove, District Public Defender; and William J. Harold, Assistant District Public Defender, for the appellant, Winston C. McClain.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; and Weakley E. Bernard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

**Procedural History and Factual Background**

The relevant facts underlying the defendant's multiple convictions, as recited by the State at the guilty plea hearing, are as follow:

> On July 22, 2011, agents of the Drug Task Force were working with a confidential informant in the Lewisburg, Marshall County area. The confidential informant indicated that the CI could purchase crack cocaine from a black male that went by the name of Chad and gave a description. Said that Chad was currently staying at a room at the Walking Horse Lodge here in Lewisburg. The CI indicated that the CI owed for a prior drug purchase in the amount of $200 and would have to pay that before being able to purchase anymore crack from the defendant. I believe there were a series of recorded telephone calls between the CI and the defendant about purchasing crack cocaine and paying the prior drug debt. So the purchase was going to be $150 worth and was supposed to weigh approximately 3 and a half grams. Ultimately, the CI was searched and taken to an area near the Walking Horse Lodge. Was let out of the vehicle and watched as the CI went to that particular room.

> The CI then entered the room; made contact with the defendant; paid the $200 prior drug deal; and paid the $150 for the purchase; received crack cocaine from the defendant and left; and returned to the Task Force agents.

> When the dope was turned over to them, they immediately noticed that it appeared to be substantially less than 3 and a half grams, so I think they actually had the CI call the defendant and complain about the weight. And the defendant said, Well, just tell you what, just bring it back.

> Of course, they did not do that. They took that into evidence. . . .

> Later that same day, the agents maintained surveillance on the motel room. They observed the defendant leaving the room. I believe he had a white female and perhaps, I believe, some children with him. They entered a vehicle and began to leave.

> The Task Force agents attempted to conduct a traffic stop of the vehicle occupied by the defendant. The defendant didn't just immediately stop in response to the blue lights. They ultimately made contact with the defendant. They conducted a search of him and discovered, I believe it was $680 on his person, $350 of which matched the money used by the confidential informant working for the Task Force in the transaction that I just described.

They obtained permission from the defendant to go back to the motel room. And in the motel room, they discovered additional crack cocaine; scales and baggies; and also, a small amount of marijuana, which, of course, was all taken into evidence.

The crack cocaine that was recovered from the room weighed, I believe it was over 21 grams. The defendant did admit that he had been involved in the distribution of crack cocaine in the Lewisburg area and had been purchasing multiple ounces and reselling it.

After being indicted by a Marshall County grand jury, the defendant began negotiating with the State, which eventually led to the defendant entering an open plea with the court.

A sentencing hearing was held on January 9, 2012. The State called Crystal Gray, an employee of the Probation and Parole Department, who prepared the defendant's pre-sentence report. She noted that the twenty-five-year old defendant, who was a confirmed member of the Crips gang, maintained that he had committed the crimes to support his fiancé and her children. The defendant stated to her that he "ha[d] never been given a chance." Ms. Gray testified, however, that the defendant had been on probation multiple times as a juvenile and once as an adult. In fact, the defendant was on probation at the time the instant crimes were committed. Ms. Gray detailed the litany of infractions committed by the defendant, which began when he was ten years old and included aggravated assault, unruly conduct, weapons offenses, escape, possession of drugs, and violations of probation. In 2002, at the age of fifteen, the defendant committed aggravated robbery and was tried and sentenced, as an adult, to eleven years. Because of numerous infractions committed while in the Department of Correction, the defendant was repeatedly denied parole. These infractions included indecent exposure, fighting, refusing direct orders, violations of prison policy, creating disturbances, possession of contraband, showing disrespect, provoking staff and inmates, using intoxicants, sexually harassing others, larceny, and assault. He was released from custody on November 21, 2010, only a few months prior to committing the instant crimes.

The defendant acknowledged that he smoked marijuana and used cocaine upon his release from prison. He indicated that he smoked marijuana daily and used cocaine about once a week during this period. The defendant also was not employed prior to committing the instant offenses.

Ms. Gray also testified about the circumstances of the defendant's arrest. On the day of the drug sale and the subsequent search of his motel room, the defendant agreed to assist task force officers. He acknowledged to the officers that he had been involved in the

distribution of crack cocaine in the area, and he gave them the name of his supplier. The defendant indicated that he purchased multiple ounces of cocaine at a time. Because of the defendant's agreement to help them, the officers did not arrest him that day. However, the defendant failed to contact them or provide any further assistance. Thereafter, the officers obtained a warrant for the defendant's arrest. When they attempted to take him into custody, the defendant ran.

The State also called Lieutenant Shane Daugherty with the 17th Judicial District Drug Task Force who was involved in the defendant's case and arrest. He acknowledged that the defendant had provided the name of his supplier and certain other details, which were corroborated by information the task force already had. However, the defendant did not participate in any controlled buys with the task force. Lieutenant Daugherty also testified that cocaine and crack cocaine usage was a major problem in Marshall County and that incarceration for these type of offenses was absolutely a deterrent to the distribution of crack cocaine.

After hearing the evidence presented, the trial court imposed sentence on the defendant, as a Range I offender. The court noted that the sale and delivery offenses in Counts 1-4 were alternative charges and merged Count 2 into 1 and Count 4 into 3. Thereafter the court sentenced the defendant as follows: (1) six years for the sale of less than .5 grams; (2) twelve years for the possession with intent to sell; (3) eleven months and twenty-nine days each for the simple possession, unlawful possession of drug paraphernalia, and the evading arrest; and (4) six months for the resisting arrest. All sentences were ordered to be served concurrently for an effective sentence of twelve years, although the court ran these sentences consecutively to an unexpired sentence from the Lewisburg City Court. Moreover, the court ordered that the sentence be served in the Department of Correction. The defendant has filed a timely notice of appeal from the sentencing decision.

**Analysis**

On appeal, the defendant contends that his sentence is excessive and contrary to the law. Our review of a defendant's challenge to the length, range, or manner of service of a sentence, has been a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2010). In a recent opinion, our supreme court provided a thorough review of the more recent developments in our sentencing laws and adopted a new standard of review for sentencing in light of these changes. *State v. Bise*, ___ S.W.3d ___, No. E2011-00005-SC-R11-CD (Tenn., Sept. 26, 2012). In announcing the new standard of review, the *Bise* court reasoned:

[W]hen the 2005 amendments vested the trial court with broad discretionary authority in the imposition of sentences, de novo appellate review and the "presumption of correctness" ceased to be relevant. Instead, sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a "presumption of reasonableness."

*Id*. Therefore, we review the defendant's sentencing challenge under an abuse of discretion standard with a "presumption of reasonableness." *Id*.

In setting the sentence length in this case, the trial court made the following detailed findings:

As to mitigating and enhancing factors, the defendant's adult record is a criminal trespass conviction. . . .

. . . .

Then he had a probation violation on that . . . and was ordered to serve 30 days. That is his adult record.

His juvenile record is as bad as any I have ever seen, but I will get to that in just a minute. . . .

Enhancing factors are criminal convictions or criminal conduct as an adult. But in addition to those criminal convictions, as an adult, . . . there is evidence of criminal conduct . . . in which the defendant, when he was initially arrested said he had been involved in the distribution of crack cocaine in the Lewisburg area. [The defendant] identified his source of supply and stated he was purchasing multiple ounces of cocaine at one time.

. . . .

[T]he defendant admits to other criminal conduct in his use of drugs.

He stated he used cocaine one or two times before he was incarcerated in TDOC. Started using it again the first night he was released from TDOC . . . . His last use was about a week . . . before he was arrested on these charges.

. . . .

Also, I find enhancing factor number 16 in two respects: That is, that he had convictions as a juvenile that would have been felonies as an adult, . . . the aggravated robbery - - well, actually, I take that back. That was an adult conviction . . . because he was transferred.

He has an aggravated assault [as well]. So the aggravated robbery . . . would go to enhancing factor 1 rather than 16. . . .

The aggravated assault conviction . . . is a felony, so that would be an enhancing factor because it was a conviction for aggravated assault while he was a juvenile.

As to mitigating factors, there's been a lot made about him naming his source.

It certainly would be entitled to more weight if he assisted the Task Force in setting somebody up or providing more information. But nevertheless, he gave a source, gave some detail about it that proved to be accurate. He is entitled to some consideration for that, albeit not what it would be had he assisted the Task Force.

He also entered an open plea. So that is some mitigation there, is mitigating factor number 13.

Nevertheless, the weight I am giving to those enhancing factors is such that I am going to impose a 12-year sentence on Count 3, which is the maximum; 6 on Count 1; 11/29 on the A misdemeanors, at 75 percent; 6 months at 75 percent on resisting arrest.

The trial court declined the State's request to run the sentences consecutively and the defendant's request for alternative sentencing. The court noted the defendant's "atrocious" history of behavior while he served his eleven-year sentence and observed that the defendant had been in the juvenile system since he was ten years old. Based on those facts, the trial court found that the defendant's potential for rehabilitation was slight.

On appeal, the defendant contends that the trial court did not comply with the purposes and principles of sentencing when weighing enhancement and mitigating factors. He argues that the sentence is not appropriate because he had a limited adult criminal record,

saved the State the expense of a trial, and was trying to financially provide for his fiancé and her children.

The Criminal Sentencing Act of 1989 and its amendments describe the process for determining the appropriate length of a defendant's sentence. Under the Act, a trial court may impose a sentence within the applicable range as long as the imposed sentence is consistent with the Act's purposes and principles. T.C.A. § 40-35-210(c)(2) and (d); *see also State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). In order to ensure "fair and consistent sentencing," the trial court must "place on the record" what, if any, enhancement and mitigating factors it considered as well as its "reasons for the sentence." T.C.A. § 40-35-210(e). Before the 2005 amendments to the Sentencing Act, both the State and a defendant could appeal the manner in which a trial court weighed enhancement and mitigating factors it found to apply to the defendant. T.C.A. § 40-35-401(b)(2) (2004). However, the 2005 amendments deleted as grounds for appeal, a claim that the trial court did not properly weigh the enhancement and mitigating factors. *See* 2005 Tenn. Pub. Acts ch. 353, §§ 8, 9.

As noted above, the defendant's entire argument rests upon his assertion that "the weight given [the enhancement and mitigating] factors did not comply with the 'purposes and principles' of the act." The defendant does not contest that the factors were inappropriately applied, only that they were improperly weighed. As noted, "[m]ere disagreement with how the trial court weighted enhancing and mitigating factors is not an adequate basis for reversing a sentence." *State v. Banks*, 271 S.W.3d 90, 146 (Tenn. 2008) (citing *Carter*, 254 S.W.3d at 345-46). Regardless, our view of the record would reveal no abuse of discretion on the part of the trial court in setting the sentence length in this case. The court considered the appropriate principles of sentencing, noted the factors which it found, expressed them clearly upon the record, and imposed a sentence within the applicable range. The defendant is entitled to no relief.

## CONCLUSION

Based upon the foregoing, the judgments of conviction and resulting sentences are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE